USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: April 3, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUNNI, LLC, *et al.*,

Plaintiffs,

v.

EDIBLE ARRANGEMENTS, INC.,

Defendant.

14 Civ. 461 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

By Opinion and Order dated March 25, 2014, the Court denied Plaintiffs' motions to remand and for a preliminary injunction, holding in relevant part that Plaintiffs had failed to demonstrate that they would suffer irreparable harm, or that they had any likelihood of success on the merits. (Dkt. #29). *See Sunni, LLC* v. *Edible Arrangements, Inc.*, No. 14 Civ. 461 (KPF), 2014 WL 1226210 (S.D.N.Y. Mar. 25, 2014).[1] The Court delayed implementation of its Opinion and Order by 10 days, until April 4, 2014, in order to allow Plaintiffs to apply for further relief from the United States Court of Appeals for the Second Circuit. They did not. Instead, on the day before the Court's Opinion and Order is set to take effect, Plaintiffs have moved for reconsideration pursuant to Local Rule 6.3. (Dkt. #31). For the reasons set forth below, their motion is denied.

[1] The Court assumes familiarity with the facts set forth in its March 25, 2014 Opinion and Order, and incorporates by reference the defined terms set forth therein.

**APPLICABLE LAW**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 (S.D.N.Y. 2011) (citing *Patterson* v. *United States,* No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). Under Local Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257).

Such a motion should not be made to "reflexively [] reargue those issues already considered when a party does not like the way the original motion was resolved," and is not a substitute for an appeal. *In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 387 (citing *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008)); *Grand Crossing, L.P.* v. *U.S. Underwriters Ins. Co.*, No. 03 Civ. 5429 (RJS), 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (citing *Morales* v. *Quintiles Transnational Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998)). Lastly, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources.'" *Parrish* v. *Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citing *In re Health Mgmt. Sys Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

**DISCUSSION**

Preliminarily, Plaintiffs point to no controlling decisions that the Court overlooked, nor any "intervening change of law." *See, e.g.*, *Devinsky* v. *Kingsford*, No. 05 Civ. 2064 (PAC), 2008 WL 2704338, at *2 (S.D.N.Y. July 10, 2008) (denying motion for reconsideration because, *inter alia*, the defendant did not point to any "intervening change of law"). Instead, Plaintiffs take issue with the Court's consideration of the issues raised by Defendant's March 24, 2014 letter (Dkt. #28), which the Court referenced in its March 25, 2014 Opinion and Order. (Dkt. #31). Plaintiffs argue that (i) it was improper for the Court to rely on representations contained in Defendant's March 24 letter; (ii) it was inappropriate for Defendant to raise a "new theory" in that letter; and (iii) the Court improperly relied upon Defendant's faulty reading of the Agreements in holding that Plaintiffs would not suffer irreparable harm. Each argument will be addressed in turn.

Put simply, it was not improper to rely upon defense counsel's representation to the Court as to what his client intended to do. "[C]ourts must rely on the representations of counsel about their client's positions," and that is precisely what the Court did. *Britto* v. *Salius*, 360 F. App'x 196, 199 (2d Cir. 2010) (summary order). On March 17, 2014, the Court reached out to both parties to solicit information as to what would actually happen should

Plaintiffs' request for injunctive relief be denied. *Sunni*, 2014 WL 1226210, at *5 (noting that "Plaintiffs have equivocated with respect to the precise harm that would occur should injunctive relief not be granted"). In fact, it was due to the deficiencies in Plaintiffs' proof — on which they bore the burden of production — that the Court's solicitation of further information was even necessary. *Id.* at *5-6 (noting that "[e]ven after the March 3 hearing, however, the record was silent as to how long this arrangement could continue, whether Defendant would allow Plaintiffs to continue to use the EA marks, or whether Plaintiffs could still purchase raw materials from EA"). It also bears mention that *both sides* submitted additional information to the Court after March 17. In particular, on March 21, 2014, Plaintiffs submitted additional financial information for one store for one month, in furtherance of its irreparable harm arguments. (Dkt. #27). The Court referenced that submission in its Opinion. *Sunni*, 2014 WL 1226210, at *10-12.

Plaintiffs further contend that Defendant raised a "novel theory," involving new evidence, in its March 24 letter, and request the opportunity to "refute" that theory at a new hearing. (Dkt. #31). Neither the theory nor the evidence was new. Defendant's position has always been that it wished to exercise its rights under the Agreements to address Plaintiffs' conduct, without waiting for the conclusion of the arbitration proceedings. The Agreements were plainly not new evidence; they were discussed at length in the parties' submissions and at the hearing, and one agreement was attached as Exhibit A to Plaintiff's original Petition filed in New York State Supreme Court. (*See* Dkt.

#1). While Defendant's initial position was to let the stores close after a possible, but not definite, wind-down period, it now offers the considerably less severe alternative of letting EA assume temporary management of the franchises pending resolution of the arbitrations as provided for in Section 15(C) of the Agreements. (Dkt. #28).

It could not have been a surprise to Plaintiffs that Defendant was seeking exercise of its rights under the Agreements, and it was not. On March 24, 2014, after Defendant filed its letter referencing the Section 15(C) option, Plaintiffs filed no response, nor did they even request an opportunity to do so. They have instead waited nearly two weeks to object and respond to Defendant's letter, a delay the Court finds curious.

Moreover, to the extent that Defendant did not specifically mention the option of temporarily assuming management of the franchises at the hearing, such reticence is due to Plaintiffs' litigation decisions. As noted above, Plaintiffs bore the burden of proof on their motion for a preliminary injunction, and they failed to submit coherent evidence as to the precise harm that would befall them should injunctive relief not issue. Plaintiffs elected to focus the March 3, 2014 hearing on the merits of their claims, and Defendant was merely responding to the issues *as Plaintiffs had framed them*. Defendant had no obligation to proactively submit evidence to caulk the holes in Plaintiffs' proof, nor to respond to issues that Plaintiffs elected not to raise. It did have an obligation, as did Plaintiffs, to respond to the Court's request for additional information.

Lastly, even if Plaintiffs are correct in disputing Defendant's interpretation of the Agreement, and there are reasons to doubt that,[2] it is almost entirely irrelevant because the Court specifically found that "*[e]ven if EA did not assume management of the franchises*, Plaintiffs have nonetheless failed to demonstrate that they would suffer any irreparable harm," and provided extensive discussion of the reasons why. *Sunni*, 2014 WL 1226210, at *11 (emphasis added). Thus, if references to Defendant's March 24 letter were excised from the March 25 Opinion and Order, the Court's holding would remain unchanged. Plaintiffs' motion for a preliminary injunction failed not merely on this point, but on every point. Plaintiffs show no likelihood of success on the merits, and failed to demonstrate that they would suffer irreparable harm, whether or not EA assumes management of the franchises. *Sunni*, 2014 WL 1226210, at *17-18.

---

2 Though resolution of this issue is immaterial to the Court's decision herein, the Court notes that Section 15(C) does not appear to be as inapplicable as Plaintiffs contend. (*See also* Dkt. #33). Moreover, the Court was aware of Plaintiffs' property interests in the equipment and the leases associated with their franchises, because those facts were established at the March 3 hearing. Perhaps for this reason, EA seeks only to *temporarily* assume management, not ownership, of the franchises during the pendency of the arbitration proceedings, a period of time Plaintiffs submit would be no more than two to three months. *Sunni*, 2014 WL 1226210, at *7 & n.5. Simply put, Plaintiffs have not raised any facts the Court overlooked or failed to consider.

## CONCLUSION

In sum, Plaintiffs have failed to come forth with any controlling law or facts the Court overlooked that could in any way be "expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. Plaintiffs here are merely quarreling with the Court's holdings; the Court will not grant a motion for reconsideration on this basis. Plaintiff's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate Docket Entry 31.

SO ORDERED.

Dated: April 3, 2014
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge